UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                      :
IN RE:                      :        21-CV-6296 (JMF)
                      :
IBM ARBITRATION AGREEMENT LITIGATION   :    OPINION AND ORDER
                      :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      In these consolidated cases, twenty-six former employees of International Business

Machines Corporation ("IBM") seek to challenge two provisions of the arbitration agreements

that they signed prior to their termination. Plaintiffs either sought to, or intend to, assert claims

under the Age Discrimination in Employment Act ("ADEA") against IBM in arbitration. When

they filed these cases, Plaintiffs did not dispute that they were required to bring these claims in

arbitration — and, indeed, most of them had. *See* ECF No. 1 ("Compl."), at 9-10; ECF No. 27

("Pls.' Mem."), at 2; ECF No. 61 ("Pls.' Opp'n"), at 16.[1] Instead, through their Complaints, they

seek a declaratory judgment that two provisions of their arbitration agreements are

unenforceable: a provision that governs the timeliness of their arbitration claims (the "Timeliness

Provision") and a confidentiality clause (the "Confidentiality Provision").

      IBM now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to

dismiss Plaintiffs' claims. At the same time, Plaintiffs move, pursuant to Rule 56 of the Federal

Rules of Civil Procedure, for summary judgment. Additionally, Plaintiffs move for leave to

amend their Complaints to add a claim for fraudulent inducement, challenging the enforceability

---

[1]    As discussed below, Plaintiffs have since taken a different tack, moving to amend their
Complaints to bring claims challenging the enforceability of their arbitration agreements. *See*
ECF No. 83 ("Pls.' Mot. to Amend Reply"), at 9. All citations to the record are to filings in 21-
CV-6296 (JMF), unless otherwise specified.

of the arbitration agreements in their entirety.  For the reasons that follow, IBM's motion to

dismiss is GRANTED, Plaintiffs' motion for summary judgment is DENIED as moot, and

Plaintiffs' motion for leave to amend is likewise DENIED.

## BACKGROUND

In considering a Rule 12(b)(6) motion, courts are limited to the facts alleged in the

complaint, which are presumed to be true.  *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551

F.3d 122, 124 (2d Cir. 2008) (per curiam).  A court may also consider documents "incorporated

by reference" into the complaint, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.

2010); documents that are "integral" to the complaint, *id.*; and "documents of which [the court]

may take judicial notice, including pleadings and prior decisions in related lawsuits," *Gertskis v.*

*U.S. E.E.O.C.*, No. 11-CV-5830 (JMF), 2013 WL 1148924, at *1 (S.D.N.Y. Mar. 20,

2013), *aff'd*, 594 F. App'x 719 (2d Cir. 2014) (summary order).  Accordingly, the following

facts are drawn from the pleadings and the aforementioned additional documents.[2]

### A.  Plaintiffs' Terminations and Arbitration Agreements

Plaintiffs are all former IBM employees who were over the age of forty at the time of

their terminations.  *See* Compl. ¶ 7.[3]  They allege that they were laid off as a result of a

company-wide discriminatory scheme designed to reduce the population of older workers to

---

[2]     Plaintiffs submitted evidence outside of the pleadings in support of their motion for summary judgment.  *See* ECF Nos. 29, 40.  For the reasons discussed below, however, the Court does not reach Plaintiffs' motion and, thus, does not consider this evidence.

[3]     The complaints in each of the member cases consolidated under No. 21-CV-6296 are materially identical, unless otherwise noted.

make way for a new, younger generation of employees.  *Id.* ¶¶ 8-9.[4]  IBM's "top management" allegedly implemented this scheme in order to better compete with newer technology companies, such as Google, Facebook (now Meta), Amazon, and others.  *Id.* ¶ 9.  In 2020, following a multi-year investigation, the Equal Employment Opportunity Commission ("EEOC") issued a determination that there was reasonable cause to believe IBM had in fact discriminated against older employees during the time Plaintiffs were laid off.  *Id.* ¶ 10.

Upon termination, each Plaintiff signed an agreement to waive almost all of his or her legal claims against IBM in exchange for a modest severance.  *Id.* ¶ 11.  The waiver did not cover ADEA claims, but each Plaintiff's agreement separately provided that such claims could be pursued only through individual arbitration proceedings.  *Id.*  Two provisions of the arbitration agreement (the "Arbitration Agreement") — the terms of which were identical for all Plaintiffs — bear particular relevance here: the Timeliness Provision and the Confidentiality Provision.  ECF No. 29-2, at 25-27 ("Arb. Agreement"), at 25-26.[5]  The first provides:

> To initiate arbitration, [the employee] must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim.  If the demand for arbitration is not timely submitted, the claim shall be deemed waived.

---

[4]     The details of the alleged discriminatory scheme are recounted in *Rusis v. International Business Machines Corp.*, 529 F. Supp. 3d 178, 188-90 (S.D.N.Y. 2021), an opinion issued by Judge Caproni in a related case, familiarity with which is presumed.

[5]     The Court may consider the Arbitration Agreement for the purposes of resolving IBM's motion to dismiss because it is "incorporated into the complaint by reference."  *Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013); *see* Compl. ¶¶ 12-14, 24.

Arb. Agreement 26.  Importantly, the provision further specifies that "[t]he filing of a charge or complaint with a government agency . . . shall not substitute for or extend the time for submitting a demand for arbitration."  *Id.*  The Confidentiality Provision, meanwhile, states:

> To protect the confidentiality of proprietary information, trade secrets or other sensitive information, the parties shall maintain the confidential nature of the arbitration proceeding and the award.  The parties agree that any information related to the proceeding, such as documents produced, filings, witness statements or testimony, expert reports and hearing transcripts is confidential information which shall not be disclosed, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision by reason of this paragraph.

*Id*. at 27.  The Arbitration Agreement also provides that "[a]ny issue concerning" its "validity or enforceability . . . shall be decided only by a court of competent jurisdiction."  *Id.* at 25.

## B.  The Arbitration Proceedings

Before filing suit here, twenty-four of the twenty-six Plaintiffs (the "Post-Arbitration Plaintiffs") — all but Plaintiffs Brian Flannery and Phillip Corbett — sought to pursue their ADEA claims in arbitration.  Compl. ¶ 12; *see* Pls.' Mem. 8; ECF No. 48 ("Def.'s Mem."), at 4, n.2; *see also* No. 21-CV-6384, ECF No. 1 ("Flannery Compl."), ¶¶ 12, 16; No. 21-CV-6380, ECF No. 1 ("Corbett Compl."), ¶¶ 12, 16.  In each case, the arbitrator dismissed the Plaintiff's claims as untimely.  Pls.' Mem. 8; *see also* ECF Nos. 29-26 to 29-48.  Specifically, the arbitrator held that the Post-Arbitration Plaintiffs had failed to file written arbitration demands within the time specified by the Timeliness Provision.  *See* Pls.' Mem. 8; *see, e.g.*, ECF No. 29-26, at 1.  In each case, the arbitrator further held that the Timeliness Provision bars application of the "piggybacking rule," which Plaintiffs had argued would render their claims timely.  *See* Pls.' Mem. 8; *see, e.g.*, ECF No. 29-26, at 2-3.  The judicially created piggybacking rule is an exception to the ADEA's EEOC charge-filing requirement, which requires a plaintiff seeking to bring an ADEA claim in court to file an EEOC charge within 180 or 300 days after the "alleged

unlawful employment practice occurred," and then to wait "until 60 days after" that charge is filed to sue. 29 U.S.C. § 626(d)(1).[6] Pursuant to the piggybacking rule, a plaintiff who failed to file his or her own EEOC charge within the 180- or 300-day deadline can "piggyback" off of another person's timely filed EEOC charge that alleges "similar discriminatory treatment in the same time frame." *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 564 (2d Cir. 2006), *aff'd*, 552 U.S. 389 (2008).

Notably, no Post-Arbitration Plaintiff filed a petition to vacate his or her arbitral decision within the three-month timeframe set forth in the Federal Arbitration Act ("FAA"). 9 U.S.C. § 12; *see* Pls.' Opp'n 16. The other two Plaintiffs — Flannery and Corbett — had not yet initiated arbitration proceedings as of the date they filed their Complaints here. *See* Pls.' Mem. 8; Flannery Compl. ¶¶ 12, 16; Corbett Compl. ¶¶ 12, 16.

## C. The *Rusis* Action and Plaintiffs' Individual Actions

Before filing their Complaints here, Plaintiffs first sought to opt into a putative class action pending before Judge Caproni, *Rusis v. International Business Machines Corp.*, No. 18-CV-8434.[7] *Rusis*, which was filed in 2018, involves the same underlying ADEA claims as those Plaintiffs press here, but was brought by IBM employees who had not signed the Arbitration Agreements at issue here. *See Rusis*, 529 F. Supp. 3d at 188-90. In March 2021, Judge Caproni dismissed the claims of Plaintiffs here on the ground that the Arbitration Agreements they had

---

[6]   In addition to the deadline for filing an EEOC charge, the ADEA "also imposes a 90-day deadline for the commencement of a court action if the EEOC notifies the claimant that it has dismissed her charge or has otherwise terminated the proceedings." *Francis v. Elmsford Sch. Dist.*, 442 F.3d 123, 126 (2d Cir. 2006); *see* 29 U.S.C. § 626(e).

[7]   Plaintiffs clarified in briefing that the Complaints filed by Plaintiffs Flannery and Deborah Kamienski "inadvertently state incorrectly that they opted in to *Rusis*." Pls.' Mem. 3 n.4. The clarification is immaterial to the pending motions.

signed contained a class and collective action waiver that barred them from opting into the *Rusis* putative class action.  *Id.* at 195-96.  In a footnote, Judge Caproni expressed "skepticism" with respect to Plaintiffs' argument that the Timeliness Provision in their Arbitration Agreements was unenforceable because it purported to waive a substantive right under the ADEA — namely, the piggybacking rule.  *Id.* at 192 n.4.  Ultimately, however, Judge Caproni "d[id] not reach the issue" given Plaintiffs' intention to file "individual actions involving the same issue."  *Id.*

Approximately four months after Judge Caproni's decision in *Rusis*, Plaintiffs brought these cases seeking declaratory relief.  *See* Compl. 9-10.  In particular, Plaintiffs seek a declaratory judgment that two provisions of their arbitration agreements — the Timeliness and Confidentiality Provisions — are unenforceable.  *See id.*  On August 24, 2021, the Court consolidated the actions, while clarifying that each action would retain its "separate" identity.  ECF No. 20 (quoting *Hall v. Hall*, 138 S. Ct. 1118, 1128-31 (2018)).[8]  Plaintiffs thereafter moved for summary judgment, and IBM filed a motion to dismiss.  ECF Nos. 27, 47.  Nearly a month after briefing for those two motions was complete, Plaintiffs filed a motion for leave to amend their Complaints in order to add a class-based fraudulent inducement claim.  *See* ECF No. 79 ("Pls.' Mot. to Amend Mem."), at 1-2; ECF No. 79-1 ("PAC").  IBM opposed.  ECF No. 80.

## DISCUSSION

As noted, three motions are before the Court: (1) IBM's motion to dismiss the Complaints; (2) Plaintiffs' motion for summary judgment; and (3) Plaintiffs' motion for leave to

---

[8]     The Court consolidated the following twenty-five member cases under No. 21-CV-6296 on August 24, 2021: Nos. 21-CV-6296; 21-CV-6297; 21-CV-6308; 21-CV-6310; 21-CV-6312; 21-CV-6314; 21-CV-6320; 21-CV-6322; 21-CV-6323; 21-CV-6325; 21-CV-6326; 21-CV-6331; 21-CV-6332; 21-CV-6337; 21-CV-6340; 21-CV-6341; 21-CV-6344; 21-CV-6349; 21-CV-6351; 21-CV-6353; 21-CV-6355; 21-CV-6375; 21-CV-6377; 21-CV-6380; 21-CV-6384.  *See* ECF No. 20.  On November 24, 2021, the Court added one additional action, No. 21-CV-6307.  *See* ECF No. 57.  In total, there are twenty-six member cases in this action.

amend.  Before the Court turns to any of these motions, however, it has an "independent

obligation" to address the threshold question of subject-matter jurisdiction.  *Arbaugh v. Y&H

Corp.*, 546 U.S. 500, 514 (2006) ("[Courts] have an independent obligation to determine whether

subject-matter jurisdiction exists, even in the absence of a challenge from any party."); *see, e.g.*,

*Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) ("Subject-matter jurisdiction cannot be forfeited or

waived and should be considered when fairly in doubt.").  To the extent that the Court concludes

that it has jurisdiction to do so, the Court will then turn to the parties' motions in turn.

## A.  Subject-Matter Jurisdiction

Plaintiffs here invoke the Court's federal-question jurisdiction based on the Declaratory

Judgment Act ("DJA"), 28 U.S.C. §§ 2201-02.  *See* Compl. ¶ 5.  Under the DJA, a court "may

declare the rights and other legal relations of any interested party seeking such declaration" in "a

case of actual controversy within its jurisdiction."  28 U.S.C. § 2201.  "The purpose of

declaratory relief is to relieve litigants from the ongoing or imminent harm they may suffer when

their rights vis-à-vis each other are uncertain."  *Parker v. Citizen's Bank, N.A.*, No. 19-CV-1454

(VEC), 2019 WL 5569680, at *4 (S.D.N.Y. Oct. 29, 2019) (citing *United States v. Doherty*, 786

F.2d 491, 498 (2d Cir. 1986)).  It is therefore a "prospective remedy intended to resolve or

mitigate disputes that may yield later litigation."  *EFG Bank AG, Cayman Branch v. AXA

Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 99 (S.D.N.Y. 2018).

Importantly, as relevant here, claims "in a declaratory judgment action" are only "ripe[]"

where "there is a substantial controversy, between parties having adverse legal interests, of

sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Duane

Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005).  "[A]

touchstone to guide the probe for sufficient immediacy and reality is whether the declaratory

relief sought relates to a dispute where the alleged liability has already accrued or the threatened

risk occurred, or rather whether the feared legal consequence remains a mere possibility."

*Wilmington Tr., Nat'l Ass'n v. Est. of McClendon*, 287 F. Supp. 3d 353, 364 (S.D.N.Y. 2018).

Additionally, "[t]he DJA 'confers a discretion on the courts rather than an absolute right

upon the litigant.'" *John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*, No. 11-CV-5453 (CM),

2011 WL 5245192, at *4 (S.D.N.Y. Nov. 2, 2011) (quoting *Wilton v. Seven Falls Co.*, 515 U.S.

277, 287 (1995)); *see* 28 U.S.C. § 2201 ("[Courts] *may* declare the rights and other legal

relations of any interested party seeking such declaration . . . ." (emphasis added)).  Indeed,

"[c]ourts have consistently interpreted [the] permissive language [of the DJA] as a broad grant of

discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they

would otherwise be empowered to hear."  *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359

(2d Cir. 2003) (per curiam).  "[T]o decide whether to entertain an action for declaratory

judgment," courts in this Circuit consider "(1) whether the judgment will serve a useful purpose

in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the

controversy and offer relief from uncertainty."  *Duane Reade, Inc.*, 411 F.3d at 389.

Applying the foregoing standards, the Court first concludes, as an exercise of its

discretion, that it is not appropriate to entertain jurisdiction over the Post-Arbitration Plaintiffs'

claims.  That is because "there is no current or impending controversy about the[ir] rights or

obligations [vis-à-vis IBM] for this Court to clarify."  *Parker*, 2019 WL 5569680, at *3.  As

Plaintiffs themselves concede, each of the Post-Arbitration Plaintiffs already arbitrated their

ADEA claims, lost, and chose not to file any motion to vacate the arbitral decision within the

three-month deadline under the FAA.  *See* Compl. ¶ 12, 16; ECF Nos. 29-26 to 29-48; Pls.'

Opp'n 16; *see also* 9 U.S.C. § 12.  Instead, they waited nearly two (and in some cases more than

two) years after they received their arbitration decisions to initiate this action for declaratory relief challenging the enforceability of two provisions of their arbitration agreements.  *See* ECF Nos. 29-26 to 29-48.

In light of these circumstances, both factors that the Second Circuit has instructed district courts to consider weigh against exercising DJA-jurisdiction over the Post-Arbitration Plaintiffs' claims.  There is no "useful purpose" that a declaratory judgment would serve at this point; nor is there any "uncertainty" in the parties' legal relations for the Court to resolve.  *Duane Reade, Inc.*, 411 F.3d at 389.  To the contrary, the arbitration proceedings definitively resolved the Post-Arbitration Plaintiffs' ADEA claims, and the window to challenge those rulings, or the enforceability of the provisions that governed them, has long since closed.  *Duane Reade, Inc.*, 411 F.3d at 389; *see also* 9 U.S.C. § 12.[9]  The Court therefore declines to exercise jurisdiction to resolve the Post-Arbitration Plaintiffs' claims.  *See Duane Reade, Inc.*, 411 F.3d at 389; *Jenkins v. United States*, 386 F.3d 415, 417-18 (2d Cir. 2004) ("[DJA actions] must have . . . some useful purpose to be achieved in deciding them."); *see also, e.g.*, *Parker*, 2019 WL 5569680, at *3, *5

---

[9]     Plaintiffs argue that, although the deadline to seek vacatur of the arbitration decisions has passed, they could nevertheless seek "relief from judgment pursuant to [Federal Rule of Civil Procedure] 60" in arbitration "[s]hould th[e] Court determine that the timeliness provision in the arbitration agreement is . . . unenforceable." Pls.' Opp'n 17. But, as noted, it has been nearly two (or more) years since the Post-Arbitration Plaintiffs' ADEA claims were dismissed in arbitration, making it highly unlikely that any arbitrator would in fact entertain any Rule 60(b) motion. *See* Fed. R. Civ. P. 60(c) ("A motion under Rule 60(b) must be made within a reasonable time — and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."). Thus, Plaintiffs' proposed Rule 60 workaround does not alter this Court's conclusion that a declaratory ruling on the enforceability of the Timeliness and Confidentiality Provisions would be unlikely to serve any "useful purpose" with respect to the Post-Arbitration Plaintiffs. *Duane Reade, Inc.*, 411 F.3d at 389. Moreover, Plaintiffs' reliance on the DJA is little more than a transparent attempt to "avoid the procedural requirements" and limitations associated with motions to vacate arbitral awards. *Parker*, 2019 WL 5569680, at *5; *see also John Wiley & Sons*, 2011 WL 5245192, at *4. That is all the more reason to be wary of exercising subject-matter jurisdiction in these circumstances.

(declining to exercise jurisdiction over a DJA claim where the "[d]eclaratory relief [sought] . . . would not resolve any ongoing or impending harm to [the p]laintiff vis-à-vis her relationship with [the d]efendants" and "would not clarify any uncertainty in the parties' legal relations"); *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 439 (S.D.N.Y. 2002) (reaching the same result because, *inter alia*, the "[c]ourt [wa]s not persuaded . . . the declaratory relief [sought] would . . . serve a useful purpose in clarifying the legal relations between the parties"), *aff'd*, 346 F.3d 357 (2d Cir. 2003).  Thus, the claims of the Post-Arbitration Plaintiffs must be, and are, dismissed.[10]

---

[10]     Separate and apart from the foregoing, the Supreme Court's recent decision in *Badgerow v. Walters*, 142 S. Ct. 1310 (2022) — which was issued after the Court issued its August 24, 2022 Order regarding subject-matter jurisdiction, ECF No. 20, and after briefing in these cases was complete — casts doubt on the Court's jurisdiction over the Post-Arbitration Plaintiffs' claims.  In brief, the *Badgerow* Court held that the "look-through" approach to determining jurisdiction for motions to compel jurisdiction under Section 4 of the FAA does not apply to motions to confirm or vacate arbitral awards under Sections 9 and 10 of the FAA.  *Id.* at 1314. As such, the source of jurisdiction must appear on "the face of the Section 9 or 10 application[]" — that is, it generally must show that there is diversity jurisdiction or allege "that federal law (beyond Section 9 or 10 itself) entitles the applicant to relief."  *Id.* at 1316-17.  Here, the DJA is the sole proffered basis for federal jurisdiction.  But the DJA does not confer jurisdiction on its own; instead, "when determining declaratory judgment jurisdiction, [courts] often look to the character of the threatened action.  That is to say, they ask whether a coercive action brought by the declaratory judgment defendant . . . would necessarily present a federal question." *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197 (2014) (cleaned up). Assuming that the "threatened action" with respect to the Post-Arbitration Plaintiffs' claims would be a motion to confirm an arbitration award under Section 9 (given that those Plaintiffs have already arbitrated), then the Court could not "look through" to the underlying ADEA claim for jurisdiction per *Badgerow*, 142 S. Ct. at 1314.  Instead, the federal question would have to appear on the "face" of the threatened Section 9 action for the Court to have jurisdiction over the Post-Arbitration Plaintiffs' claims.  *Id.*  But *Badgerow* provides "no examples" of what it means for a "federal question with respect to the award's confirmation or vacatur" to exist on the face of the petition.  *Bissonnette v. LePage Bakeries Park St., LLC*, 33 F.4th 650, 661 (2d Cir. 2022) (Jacobs, J., concurring).  Ultimately, however, the Court need not, and does not, resolve this thorny jurisdictional question because, for the reasons discussed above, it concludes jurisdiction is lacking on other grounds.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits.").

Additionally, the Court concludes that it lacks jurisdiction to adjudicate the remaining claims (those of Plaintiffs Flannery and Corbett) regarding the Confidentiality Provision because they are not yet — and may never become — ripe.  *See* Compl. 10, ¶ 2.[11]  As noted, "[t]he standard for ripeness in a declaratory judgment action is that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Duane Reade, Inc.*, 411 F.3d at 388 (internal quotation marks omitted).  To determine whether a controversy is of "sufficient immediacy and reality," courts typically look to "whether the declaratory relief sought relates to a dispute where the alleged liability has already accrued or the threatened risk occurred, or rather whether the feared legal consequence remains a mere possibility, or even probability of some contingency that may or may not come to pass." *Dow Jones & Co., Inc.*, 237 F. Supp. 2d at 406-07.  The fact that "liability may be contingent," however, "does not necessarily defeat jurisdiction of a declaratory judgment action." *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992).  "When liability is contingent," a court should "focus on 'the practical likelihood that the contingencies will occur.'" *U.S. Dep't of Treasury v. Off. Comm. of Unsecured Creditors of Motors Liquidation Co.*, 475 B.R. 347, 358 (S.D.N.Y. 2012) (quoting *Associated Indem. Corp.*, 961 F.2d at 35).

Here — as IBM points out and Plaintiffs do not dispute — the Confidentiality Provision will play a role in Flannery and Corbett's arbitration proceedings only if the arbitrator rules that they have timely ADEA claims to arbitrate in the first place.  *See* Def.'s Mem. 2, 24; Pls.' Opp'n 19-34 (not disputing this point).  But there is no "practical likelihood" that that contingency will occur.  *Associated Indem. Corp.*, 961 F.2d at 35.  That is because, as explained below, there is no

---

[11]     The Court did not consider ripeness in its August 24, 2022 Order, in which the Court indicated that it was, at that point, "satisfied . . . there is subject-matter jurisdiction given that the underlying arbitrations involved claims under the [ADEA]."  ECF No. 20.

merit to Plaintiffs' claim that the Timeliness Provision is unenforceable.  *See* Compl. 10, ¶ 1.  It follows that there is no reason to believe an arbitrator would conclude Flannery and Corbett have timely ADEA claims.  *See* Pls.' Opp'n 26 n.16 (acknowledging the Post-Arbitration Plaintiffs' ADEA claims were all "dismissed as untimely" in arbitration based on the Timeliness Provision); *cf. Chandler v. Int'l Bus. Machs. Corp.*, No. 21-CV-6319 (JGK), 2022 WL 2473340, at *7 & n.4 (S.D.N.Y. July 6, 2022) (concluding, in a case involving a challenge to the same two provisions of IBM's arbitration agreement, that the "plaintiff's claim for declaratory relief with respect to the Confidentiality Provision [was] . . . moot" given the court's holding that the Timeliness Provision is enforceable).  The net result is that the "controversy" raised by Flannery and Corbett's claims regarding the Confidentiality Provision lacks "sufficient immediacy and reality" to render it ripe for this Court's review.  *Duane Reade, Inc.*, 411 F.3d at 388.  The Court must therefore dismiss those claims without prejudice to renewal in the unlikely event that the issue ever becomes ripe.

**B.  IBM's Motion to Dismiss Plaintiffs' Challenge to the Timeliness Provision**

That leaves only the challenge of Plaintiffs Flannery and Corbett to the enforceability of the Timeliness Provision, which IBM moves to dismiss pursuant to Rule 12(b)(6).[12]  It is well established that "arbitration is a matter of contract."  *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *see* 9 U.S.C. § 2.  Thus, "courts must rigorously enforce arbitration agreements according to their terms," including "the rules under which that arbitration will be conducted."  *Id.* (internal quotation marks omitted); *accord Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).  "By agreeing to arbitrate a statutory claim," however, "a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an

---

[12]     Throughout this Section, "Plaintiffs" refers to Plaintiffs Flannery and Corbett.

arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Thus, "a substantive waiver of federally protected civil rights" in an arbitration agreement "will not be upheld." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273 (2009) (citing *Mitsubishi Motors*, 473 U.S. at 637 & n.19). Federal courts will also decline to enforce "[arbitration] agreements that prevent the 'effective vindication' of a federal statutory right." *Italian Colors*, 570 U.S. at 235; *see also Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125 (2d Cir. 2010) ("[A] federal court will compel arbitration of a statutory claim only if it is clear that 'the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum.'" (quoting *Mitsubishi Motors*, 473 U.S. at 637)).

Plaintiffs challenge the enforceability of the Timeliness Provision in their Arbitration Agreements on both grounds. That is, they argue first that it is unenforceable to the extent that it purports to waive the piggybacking rule because that rule gives rise to a substantive right under the ADEA. *See* Pls.' Mem. 3, 11-21; Pls.' Opp'n 7-15. Second, they contend that the "purported waiver would impermissibly prevent the effective vindication of Plaintiffs' claims in arbitration." Pls.' Mem. 12. Neither argument is persuasive.

### 1. The Piggybacking Rule Is Not a Substantive Right for FAA Purposes

First, there is no merit to Plaintiffs' contention that the judge-made piggybacking rule gives rise to a substantive, nonwaivable right under the ADEA. For starters, Plaintiffs do not cite, nor has the Court found, any authority to support the proposition that the ADEA creates a substantive right to piggybacking in any context — let alone specifically in the context of determining the enforceability of an agreement to arbitrate. *See* Pls.' Opp'n 7-15.[13] Instead,

---

[13]     That is perhaps unsurprising. As the Supreme Court has made clear, "courts [must] enforce agreements to arbitrate according to their terms . . . unless the FAA's mandate has been 'overridden by a contrary *congressional* command.'" *CompuCredit Corp. v. Greenwood*, 565

Plaintiffs argue that "[t]he piggybacking rule is part of . . . the ADEA's limitations period" and that the "ADEA's limitations period is a substantive right."  Pls.' Opp'n 9, 12.  But that argument is difficult, if not impossible, to square with Supreme Court and Second Circuit precedent.  Indeed, whether or not the piggybacking rule is properly considered part of the ADEA's limitations period — a question the Court need not answer — Supreme Court precedent makes plain that the substantive right protected from waiver under the FAA is far narrower than Plaintiffs claim.  As the Supreme Court explained in *14 Penn Plaza LLC*, the substantive right conferred by the ADEA for FAA purposes is the "right to be free from workplace age discrimination."  556 U.S. at 265.  Importantly, the Court "distinguished" that right from "procedural [ones], like 'the right to seek relief from a court in the first instance.'"  *Estle v. Int'l Bus. Machs. Corp.*, 23 F.4th 210, 214 (2d Cir. 2022) (quoting *14 Penn Plaza*, 556 U.S. at 265). The ADEA's limitations period falls comfortably in the latter category; it is more akin to the procedural "right to seek relief from a court in the first instance" than it is to the substantive "right to be free from workplace age discrimination."  *14 Penn Plaza*, 556 U.S. at 265.

That conclusion is bolstered by Second Circuit precedent.  In *Vernon v. Cassadaga Valley Central School District*, 49 F.3d 886 (2d Cir. 1995), the Second Circuit explained that substantive rights typically govern "primary conduct" — *e.g.*, "the alleged discrimination" — while procedural rights generally bear on "secondary conduct" — *e.g.*, "the filing of [a] suit." *Id.* at 890.  Applying that reasoning, the court held that the ADEA statute of limitations is a procedural, not substantive, right in the context of determining whether the limitations period could apply retroactively.  *Id.* at 889-90; *see also Spira v. J.P. Morgan Chase & Co.*, 466 F.

U.S. 95, 98 (2012) (emphasis added) (quoting *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)).  As noted, the piggybacking rule is judge-made.

App'x 20, 22-23 (2d Cir. 2012) ("[L]imitations periods generally do not modify underlying substantive rights.").  The Court sees no reason to deviate from that conclusion here.  Because the ADEA's limitations period governs "secondary conduct" — namely, the time period for filing a suit under the ADEA — it should not be considered a substantive, and therefore *categorically* nonwaivable, right in the arbitration context.  *Vernon*, 49 F.3d at 890. Accordingly, the Court joins Judge Koeltl in rejecting Plaintiff's argument that the "piggybacking rule" is a "substantive, non-waivable right protected by the ADEA" because "[t]he substantive right protected by the ADEA is the 'statutory right to be free from workplace discrimination.'"  *Chandler*, 2022 WL 2473340, at *4 (quoting *14 Penn Plaza*, 556 U.S. at 265); *see also Lodi v. v. Int'l Bus. Machs. Corp*, No. 21-CV-6336 (JGK), 2022 WL 2669199, at *3 (S.D.N.Y. July 11, 2022); *Rusis*, 529 F. Supp. 3d at 192 n.4 (expressing "skepticism," but not addressing, Plaintiffs' argument).

Plaintiffs raise two primary counterarguments, neither of which is persuasive.  First, Plaintiffs rely heavily on the Sixth Circuit's decision in *Thompson v. Fresh Products, LLC*, 985 F.3d 509 (6th Cir. 2021).  *See* Pls.' Mem. 15-16.  There, the Sixth Circuit held that an employer may not contractually shorten the ADEA limitations period for filing civil actions because "the limitations period[] in the . . . ADEA give[s] rise to substantive, non-waivable rights."  *Id.* at 519-21.  Importantly, however, *Thompson* did not involve an agreement to arbitrate or the piggybacking rule.  The Sixth Circuit therefore had no occasion to consider whether the same conclusion would apply in the arbitration context or whether the ADEA also confers a substantive right to piggybacking.  *See id.*  What is more, the *Thompson* court relied extensively on *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824 (6th Cir. 2019), in which the Sixth Circuit had concluded that Title VII's limitations period could not be contractually shortened.  In

so holding, however, the *Logan* court distinguished an earlier *en banc* decision upholding an agreement to arbitrate that shortened the Title VII statute of limitations period. *Id.* at 836-38 (citing *Morrison v. Cir. City Stores*, 317 F.3d 646, 673 n.16 (6th Cir. 2003) (en banc)).  Indeed, *Logan* explicitly limited its holding to "contractually shortened limitation period[s] . . . *outside of . . . arbitration agreement*[*s*]." *Id.* at 839 (emphasis added); *see also id.* at 836-38 (distinguishing *Morrison* on the grounds that it involved unique considerations in the "arbitration context").  If anything, therefore, Sixth Circuit precedent undermines rather than supports Plaintiffs' position. *See Chandler*, 2022 WL 2473340, at *6 (distinguishing *Thompson* and *Logan* on similar grounds).[14]

Second, Plaintiffs argue, in the alternative, that they could not have waived "their statute of limitations rights under the piggybacking rule by signing the arbitration agreement" because IBM did not provide them with disclosures required by the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C.§ 626(f). Pls.' Mem. 19; *see also* Pls.' Opp'n 3, 8.  The OWBPA, which amended the ADEA, does require an employer to make certain disclosures to an employee before that employee may "waive any right or claim" under the ADEA. 29 U.S.C. § 626(f)(1).  But, as the Second Circuit has made clear, "[t]he phrase 'right or claim' as used in § 626(f)(1) is limited to substantive rights and does not include procedural ones." *Estle*, 23 F.4th at 214 (citing

---

[14]    Relatedly, Plaintiffs argue that the Court should "defer" to the EEOC's position in the amicus brief it submitted in *Thompson*. *See* Pls.' Mem. 16-17 & n.18.  But putting aside whether such deference would be warranted otherwise, the EEOC's amicus brief did not take any position on the question at issue here because, as noted, *Thompson* did not involve an agreement to arbitrate or piggybacking. *See Thompson*, EEOC Brief, 2020 WL 1160190, at *19-26 (6th Cir. Mar. 2, 2020).  Moreover, the EEOC's argument relied almost exclusively on the Sixth Circuit's prior decision in *Logan*, which, as discussed, acknowledged that a different conclusion would be warranted in the arbitration context. *See id.*  Thus, the EEOC's amicus brief does not change the landscape, let alone warrant deference here.  Notably, the EEOC declined the Court's invitation to submit an amicus in *this* case. *See* ECF Nos. 20, 51.

*14 Penn Plaza*, 556 U.S. at 265-66).  Thus, Plaintiffs' reliance on the OWBPA adds nothing.  As discussed, the piggybacking rule does not give rise to a substantive right under the ADEA.  It follows that the OWBPA's disclosure requirements do not apply to waivers of that rule.  *Cf. id.* at 213-15 (holding that "[a] collective-action waiver is . . . not a waiver of any 'right or claim' under the ADEA that triggers the requirements of 29 U.S.C. § 626(f)(1)" because "collective action, like arbitration, is a procedural mechanism, not a substantive right" (internal quotation marks omitted)).  In short, for the foregoing reasons, the Court finds no support for Plaintiffs' argument that the piggybacking rule is a substantive, non-waivable right in this context.

### 2.  The Timeliness Provision Does Not Prevent Plaintiffs from Effectively Vindicating Their Rights Under the ADEA

The Court's conclusion that the piggybacking rule is procedural, not substantive, for purposes of the FAA does not mean that agreements to arbitrate may establish prohibitively short filing deadlines for ADEA claims.  Instead, it means that, like other procedural rules, the statute of limitations period may be modified in arbitration proceedings provided that the modification does not prevent the "effective vindication" of a plaintiff's substantive rights.  *Italian Colors*, 570 U.S. at 235; *see, e.g.*, *Chandler*, 2022 WL 2473340, at \*4; *cf. Ragone*, 595 F.3d at 125-26 (noting that, if an arbitration agreement shortened Title VII's limitations period from 300 to 90 days, it might raise concerns under the effective-vindication doctrine).  This approach aptly balances the "strong federal policy favoring arbitration" and courts' associated duty to enforce arbitration agreements according to their terms, on the one hand, with the need to ensure that "the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum," on the other.  *Ragone*, 595 F.3d at 121, 125.

Plaintiffs argue that, if the piggybacking rule is procedural, the Timeliness Provision violates this limiting principle.  But that argument borders on frivolous.  "Plaintiffs do not

identify any obstacle, let alone one imposed by IBM, that prevented [them] from filing an arbitration demand on their ADEA claims within the 180- or 300-day deadline established by the separation agreements." *Rusis*, 529 F. Supp. 3d at 194 n.8.  And "[h]ad [Plaintiffs] done so, . . . they could have received any relief to which they were entitled in an individual arbitration, as contemplated by IBM's separation agreements." *Id.*; *see also Smith v. Int'l Bus. Machs. Corp.*, No. 21-CV-03856 (JPB), 2022 WL 1720140, at *6 (N.D. Ga. May 27, 2022) (rejecting this same argument on similar grounds).  Notably, the timeline for filing an arbitration demand established by the Timeliness Provision is the *same* 180- or 300-day deadline provided by the ADEA itself. *See* Arb. Agreement 25; 29 U.S.C. § 626(d)(1).  Thus, to hold that Plaintiffs were prevented by the Timeliness Provision from effectively vindicating their rights under the ADEA would be to hold that no plaintiff can effectively vindicate his or her rights under the statute.  That, of course, would be "patently absurd." *Rusis*, 529 F. Supp. 3d at 194 n.8.  Accordingly, Plaintiffs' challenge to the Timeliness Provision on the ground that it prevents them from effectively vindicating their rights under the ADEA is without merit.  *See, e.g.*, *Chandler*, 2022 WL 2473340, at *4 ("[T]here can be no reasonable dispute that the Tim[eliness] Provision afforded the plaintiff a 'fair opportunity' to vindicate [his ADEA rights] in arbitration within an entirely reasonable time frame." (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)).

\*      \*      \*

In sum, because the Timeliness Provision did not waive a substantive right under the ADEA and did not prevent Plaintiffs from effectively vindicating any such rights, Plaintiffs' challenge to its enforceability fails as a matter of law.  Thus, Plaintiffs claim for declaratory relief on these grounds must be, and is, dismissed.  In light of that determination, Plaintiffs'

motion for summary judgment on that claim is also denied as moot.  *See, e.g.*, *Chandler*, 2022 WL 2473340, at *8; *Oparaji v. Mun. Credit Union*, No. 19-CV-4034 (JPC), 2021 WL 2414859, at *6 (S.D.N.Y. June 14, 2021) (denying motion for summary judgment as moot after granting motion to dismiss the claim), *aff'd*, No. 21-1518-CV, 2022 WL 1122681 (2d Cir. Apr. 15, 2022) (summary order).

## C.  Plaintiffs' Motion for Leave to Amend

Finally, the Court turns to Plaintiffs' motion for leave to amend their Complaints to add a state-law fraudulent inducement claim, which they seek to bring on a class-wide basis.  *See* Pls.' Mot. to Amend Mem.; PAC 18-21.  More specifically, Plaintiffs seek to add allegations that IBM fraudulently induced them to "sign IBM's separation agreement (containing the arbitration clause[)]" by (1) "fraudulently and in bad faith represent[ing] to [Plaintiffs] that they were being laid off for legitimate business reasons"; and (2) "misrepresenting to them that they could only maintain their health benefits through COBRA by signing the agreement."  PAC ¶¶ 46, 55. Based on these allegations, Plaintiffs assert that "there w[ere] no valid arbitration agreement[s] in the first place, meaning that [Plaintiffs] c[an] still pursue their claims in court."  ECF No. 83 ("Pls.' Mot. to Amend Reply"), at 9; *see also* PAC 21, ¶ 1 (asking the Court to "find and declare the whole of the arbitration provision in IBM's Separation Agreement . . . to be unenforceable and otherwise void").

Rule 15 of the Federal Rules of Civil Procedure provides that courts "should freely give leave" to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15(a) (2).  Nevertheless, a court has discretion to deny a motion to amend where "there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party."  *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002).  "An amendment to a pleading is futile if the proposed

claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *see also Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). Put differently, a proposed claim is futile if, accepting the facts alleged by the party seeking amendment as true and construing them in the light most favorable to that party, a proposed claim does not "plausibly give rise to an entitlement to relief." *Ashcroft*, 556 U.S. at 679. The party opposing a motion to amend bears the burden of establishing that amendment would be futile. *See, e.g.*, *Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12-CV-5651 (AJN), 2013 WL 3466810, at *6 (S.D.N.Y. July 8, 2013).

In this case, Plaintiffs' proposed amendments are futile. Beginning with the Post-Arbitration Plaintiffs, their proposed fraudulent inducement claim would fail as a matter of law because they waived any such challenge to their arbitration agreements. "If a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter." *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 368 (2d Cir. 2003) (quoting *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000)); *accord Sokolowski v. Metro. Transp. Auth.*, 723 F.3d 187, 191 (2d Cir. 2013); *see also ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 685 (2d Cir. 1996) ("An objection to the arbitrability of a claim must be made on a timely basis, or it is waived."). Moreover, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is . . . an allegation of waiver . . . or a like defense to arbitrability." *Mitsubishi Motors*, 473 U.S. at 626. Applying these standards, courts regularly find that a party has waived a challenge to an arbitration agreement where the party initiated the arbitration demand and participated in the arbitration proceedings without objection. *See, e.g.*, *Time Warner Cable of New York City LLC*

20

*v. Int'l Bhd. of Elec. Workers, AFLCIO, Loc. Union No. 3*, 684 F. App'x 68, 71 (2d Cir. 2017) (summary order) (finding waiver where the objecting party had "expressly ask[ed] the arbitrator" to resolve the dispute, and had not objected "until 5 months after the arbitrator issued an adverse interim award"); *ConnTech Dev. Co.*, 102 F.3d at 685 (same where party had participated in over a month of hearings before the arbitrator and had not asserted an objection to arbitration until forty-one months after being served with notice of the arbitration demand); *Kumaran v. ADM Inv. Servs., Inc.*, No. 20-CV-3873 (GHW) (SDA), 2021 WL 2333645, at *4 (S.D.N.Y. June 7, 2021) (same where party had "initiat[ed] the arbitration" and "participated[d] in arbitration for at least a year and a half"), *motion for reconsideration denied*, ECF No. 97, at 41-46 (S.D.N.Y Feb. 18, 2022); *Sands Bros. & Co. v. Zipper*, No. 03-CV-7731 (VM), 2003 WL 22439789, at *3 (S.D.N.Y. Oct. 27, 2003) (same where party had waited until "just twenty-two days before the arbitration was scheduled to begin, to object to the arbitration").

This precedent forecloses the Post-Arbitration Plaintiffs' proposed fraudulent inducement claims. As Plaintiffs themselves acknowledge, each Post-Arbitration Plaintiff affirmatively initiated arbitration and actively participated in arbitration proceedings until their claims were dismissed. *See* PAC ¶ 1, 7, 20, 23; *see also* Pls.' Opp'n 26 n.16. And, critically, Plaintiffs do not allege that they objected to the enforceability of their arbitration agreements at any point during their arbitration proceedings. *See* Pls.' Mot. to Amend Reply 7-9 (responding to IBM's waiver argument). To the contrary: Plaintiffs themselves previously disclaimed any attempt to challenge the enforceability of their arbitration agreements, both in *Rusis* and in the instant cases. *See* 529 F. Supp. 3d at 192 ("Plaintiffs do not dispute that [the Arbitration Opt-Ins] must arbitrate their claims." (quoting Plaintiffs' briefing)); Pls.' Mem. 2 ("Plaintiffs have not challenged the overall enforceability of IBM's arbitration agreement. They recognize that their ADEA claims

are to be pursued in arbitration.").  It was not until Plaintiffs filed their motion for leave to amend — after IBM had moved to dismiss — that they first raised any challenge to the Arbitration Agreement as a whole.  *Compare* Pls.' Mem. 2, *with* Pls.' Mot. to Amend Reply 9.  Plaintiffs cannot now — years after having received decisions in arbitration proceedings that they themselves initiated, *see* ECF Nos. 29-26 to 29-48 — "argue that the arbitrator[s] lacked authority to decide the matter."  *Opals on Ice Lingerie*, 320 F.3d at 368; *see also, e.g.*, *Time Warner Cable of New York City LLC*, 684 F. App'x at 71; *ConnTech Dev. Co.*, 102 F.3d at 685.

Plaintiffs' sole counterargument on this score is meritless.  They argue that "[t]here can be no waiver here, given the fact that the information that justified the assertion of the fraudulent inducement claims became known to Plaintiffs only after they had had their claims dismissed in arbitration."  Pls.' Mot. to Amend Reply 8.  But that argument does not withstand scrutiny.  As noted, the principal basis for Plaintiffs' proposed fraudulent inducement claims is that IBM "fraudulently and in bad faith represented to its employees that they were being laid off for legitimate business reasons" when, it is alleged, IBM was systematically discriminating against older workers.  PAC ¶¶ 46-53.  But these allegations were the core of the very ADEA claims that the Post-Arbitration Plaintiffs pursued in arbitration.  *See* PAC ¶¶ 16-20; *see also, e.g.*, ECF No. 29-7, Ex. A, ¶ 19 ("IBM has also reduced its population of older workers by terminating older employees for pretextual reasons.").  Thus, Plaintiffs' contention that they were not aware of their fraudulent inducement claims until after dismissal of those ADEA claims — which were based on the very same conduct — does not pass the laugh test.  Pls.' Mot. to Amend Reply 8.[15]

---

[15]    Indeed, Plaintiffs implicitly concede this point by arguing that "it was not until Plaintiffs' counsel had obtained the smoking gun evidence referenced in [another case], that the *degree* to which IBM fraudulently induced these individuals into entering into their arbitration agreement became clear."  Pls.' Mot. to Amend Reply 8 (emphasis added).

Conspicuously, Plaintiffs do not even attempt to argue that they were unaware of a viable fraudulent inducement claim based on misrepresentations regarding COBRA benefits prior to the dismissal of their claims in arbitration. *See id.* at 7-9.  Accordingly, the Court concludes that the Post-Arbitration Plaintiffs' proposed fraudulent inducement claims would be futile.

The proposed fraudulent inducement claim of the other two Plaintiffs, Flannery and Corbett, would likewise fail to withstand a motion to dismiss, albeit for different reasons.  "To state a claim for fraudulent inducement under New York law, a plaintiff must show: (1) a representation of material fact, (2) which was untrue, (3) which was known to be untrue or made with reckless disregard for the truth, (4) which was offered to deceive another or induce him to act, and (5) which that other party relied on to its injury." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 580 (2d Cir. 2005).  Additionally, "fraudulent inducement claim[s] [are] subject to the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure." *Senior Health Ins. Co. of Pa. v. Beechwood Re Ltd.*, 345 F. Supp. 3d 515, 525 (S.D.N.Y. 2018).  Specifically, such claims must "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b).  To satisfy that standard, a complaint must "allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995).  That is, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).  Failure to satisfy the Rule 9(b) standard warrants dismissal. *See, e.g.*, *id.* at 293; *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir. 2010).

Here, the Proposed Amended Complaint does not come close to satisfying these heightened pleading standards.  With respect to Plaintiffs' contention that IBM misrepresented

the reasons for their terminations — and, more specifically, "fraudulently and in bad faith represented to [Plaintiffs] that they were being laid off for legitimate business reasons," PAC ¶ 46 — the Proposed Amended Complaint does not "state where and when the statements were made," *Lerner*, 459 F.3d at 290.[16]  Nor does it "identify the speaker," *id.*, other than through vague references to "IBM" and "low-level managers," *see* PAC ¶¶ 46-53.  Plaintiffs likewise fail to specify where and when "IBM . . . misrepresented to [Plaintiffs] that they could only maintain their health benefits through COBRA by signing the agreement."  PAC ¶ 55.  And, as for who made those statements, the Proposed Amended Complaint merely suggests that unidentified "managers and human resource professionals" were involved.  PAC ¶¶ 54-44.  Thus, these pleadings are plainly insufficient to satisfy the requirements of Rule 9(b).  *See, e.g.*, *President Container Grp. II, LLC v. Systec Corp.*, 467 F. Supp. 3d 158, 165 (S.D.N.Y. 2020) (dismissing a fraudulent inducement claim for failure to satisfy Rule 9(b)'s requirements because the plaintiff's "allegations fail[ed] to identify who made these statements and when, [and] where, . . . they were made"); *Schlenger v. Fid. Emp. Servs. Co., LLC*, 785 F. Supp. 2d 317, 352 (S.D.N.Y. 2011) (reaching the same conclusion where the plaintiff had "fail[ed] to name individuals, identify detailed statements, or identify particular dates" on which the allegedly fraudulent statements

---

[16]      The closest Plaintiffs come is their allegation that "IBM provided employees with template letters indicating that the company was required to lay them off due to their allegedly unneeded skills and/or the company's decision to move in a different business direction."  PAC ¶ 47.  But Plaintiffs did not specify when these "template letters" were sent and what specific statements they contained that allegedly give rise to a fraudulent inducement claim.  *Cf. McCormack v. IBM*, 145 F. Supp. 3d 258, 276 (S.D.N.Y. 2015) (finding Rule 9(b)'s requirements met for a fraudulent inducement claim where the plaintiff alleged that another employee, who was identified by name, sent an "email . . . on June 12, 2013, inform[ing] [the plaintiff] that he was 'being terminated as part of a broader fiscally-driven "resource action," identified [by name,] which IBM allegedly was implementing "to streamline operations and increase business productivity"'").

were made).  Accordingly, Plaintiffs' motion for leave to amend is DENIED on the basis of

futility — that the Proposed Amended Complaint would not survive a motion to dismiss.

## CONCLUSION

For the foregoing reasons, IBM's motion to dismiss Plaintiffs' Complaints is

GRANTED.  In particular, the Court declines to exercise jurisdiction over the Post-Arbitration

Plaintiffs' claims and dismisses Flannery and Corbett's challenges to the Confidentiality

Provision as unripe.  Additionally, the Court grants IBM's motion to dismiss Flannery's and

Corbett's challenges to the Timeliness Provision for failure to state a claim (and declines to grant

leave to amend those claims because the defects in the claims are substantive and any

amendment would therefore be futile).  *See, e.g.*, *Ipsos-Insight, LLC v. Gessel*, 547 F. Supp. 3d

367, 380 (S.D.N.Y. 2021); *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6

(S.D.N.Y. Apr. 28, 2021) (collecting cases).  Finally, Plaintiffs' motion for summary judgment is

DENIED as moot, and Plaintiffs' motion for leave to amend is DENIED.

One housekeeping matter remains: The parties filed letter-motions to seal portions of

their motion papers.  ECF Nos. 26, 33, 35, 41, 60, 72.  The Court granted these letter-motions

temporarily, pending its decision on the underlying motions. ECF Nos. 32, 36, 42, 63, 74.  It is

well established that filings that are "relevant to the performance of the judicial function and

useful in the judicial process" are considered "judicial documents" to which a presumption in

favor of public access attaches.  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d

Cir. 2006).  Significantly, assessment of whether the presumption in favor of public access is

overcome must be made on a document-by-document basis.  *See, e.g.*, *Brown v. Maxwell*, 929

F.3d 41, 48 (2d Cir. 2019)  And the mere fact that information is sealed or redacted by

agreement of the parties is not a valid basis to overcome the presumption.  *See, e.g.*, *United*

*States v. Wells Fargo Bank N.A.*, No. 12-CV-7527 (JMF), 2015 WL 3999074, at *4 (S.D.N.Y. June 30, 2015).  Accordingly, **no later than two weeks from the date of this Opinion and Order**, any party that believes any materials currently under seal or in redacted form should remain under seal or in redacted form is ORDERED to show cause in writing, on a document-by-document basis, why doing so would be consistent with the presumption in favor of public access.  Any such submission should address the import of Judge Liman's decision in *Lohnn v. International Business Machines Corp.*, No. 21-CV-6379 (LJL), 2022 WL 36420 (S.D.N.Y. Jan. 4, 2022), as well as the documents that have been made public as a result of that decision.

Further, the parties shall consult and comply with Section 7 of the Court's Individual Rules, which requires, among other things, that any party seeking leave to maintain a document in redacted form must simultaneously publicly file on ECF a copy of the document with proposed redactions and also file under seal on ECF (with the appropriate level of restriction) an unredacted copy of the document with the proposed redactions highlighted.  Any document for which the parties do not move for the Court to maintain under seal or in redacted form **within two weeks of the date of this Opinion and Order** shall be unsealed without any further notice to the parties.  The parties shall, no later than **three weeks of the date of this Opinion and Order** file a joint letter with the list of the ECF numbers of the filings to be unsealed.

The Clerk of Court is directed to terminate ECF Nos. 27, 33, 38, 47, and 79.

SO ORDERED.

Dated: July 14, 2022
        New York, New York

_____
JESSE M. FURMAN
United States District Judge